IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES GONIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 12-309-CJP |
| ) | |
| **MICHAEL J. ASTRUE**, ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff James Gonis is before the Court, represented by counsel, seeking review of the final decision of the Commissioner of Social Security denying him Disability Insurance Benefits (DIB).[1]

## Procedural History

Mr. Gonis applied for benefits in August, 2009, alleging disability beginning on March 24, 2009. (Tr. 165). The application was denied initially and on reconsideration. After holding a hearing, ALJ William L. Hafer denied the application for benefits in a decision dated September 12, 2011. (Tr. 11-22). Plaintiff's request for review was denied by the Appeals Council, and the decision of the ALJ became the final agency decision. (Tr. 1).

Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## Issues Raised by Plaintiff

Plaintiff argues that the ALJ erred in the following respects:

---

[1] This case was referred to the undersigned for final disposition upon consent of the parties, pursuant to 28 U.S.C. §636(c). See, Doc. 10.

    1.       He failed to develop the record in that he denied plaintiff's request for a consultative physical examination following an MRI of his lumbar spine.

    2.       He found that plaintiff was functionally illiterate but failed to include that limitation in his hypothetical question to the vocational expert.

### **Applicable Legal Standards**

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. §§ 423(d)(1)(A).** A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. **42 U.S.C. §§ 423(d)(3).** "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. **20 C.F.R. §§ 404.1572.**

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. It must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. ***Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992); see also, 20 C.F.R. §§ 404.1520(b-f).**

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. The scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial

evidence, shall be conclusive. . . ." **42 U.S.C. § 405(g)**. Thus, this Court must determine not whether Mr. Gonis is, in fact, disabled, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. **See,** ***Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996)** (citing ***Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)**)). This Court uses the Supreme Court's definition of substantial evidence, i.e, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." ***Richardson v. Perales*, 402 U.S. 389, 401 (1971).**

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. ***Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997)**. However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, ***Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.**

### The Decision of the ALJ

ALJ Hafer followed the five-step analytical framework described above. He determined that Mr. Gonis was insured for DIB through March 31, 2011, and that he had not been engaged in substantial gainful activity since the alleged onset date. He determined that plaintiff had severe impairments of history of coronary artery disease with bypass grafting, minimal arthritis of the left rotator cuff, degenerative disc disease of the lumbar spine, depression, learning disorder with test results in the borderline range of intellectual functioning and functional illiteracy, and hypertension controlled with medication. He further determined that these impairments do not meet or equal a listed impairment.

The ALJ found that Mr. Gonis had the residual functional capacity to perform a limited range of work at the light exertional level. Based on the testimony of a vocational expert, the ALJ found that Mr. Gonis was unable to do his past relevant work, but he was able to do other

work such as cleaner and hand packer, both of which exist in significant numbers in the regional economy.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

**1.    Agency Forms**

Mr. Gonis was born in 1958, and was almost 51 years old when he allegedly became disabled in March, 2009. He was last insured for DIB as of March 31, 2011. (Tr. 190). He said that he was unable to work because of heart problems, rotator cuff problems, illiteracy due to a head injury and bladder problems. He stopped working in December, 2005. (Tr. 194).

In the past, plaintiff had worked as a dock worker/truck loader and as a maintenance man/janitor. (Tr. 195).

Plaintiff completed the 8th grade, but was in special education classes in all subjects. (Tr. 198).

Plaintiff's wife submitted a report in which she stated that Mr. Gonis could not follow written instructions such as a recipe because "he can't read." (Tr. 212). She also said that she worked at the same place as her husband and she told him what he needed to do on the job because he could not read. (Tr. 214, 244).

Plaintiff's niece filled out some of the forms for him. (Tr. 216-226). She wrote that he was "unable to understand or fill out forms himself." (Tr. 223). Plaintiff's wife also filled out some forms for him. (Tr. 244).

**2.    Evidentiary Hearing**

Plaintiff was represented by an attorney at the evidentiary hearing on August 1, 2011. (Tr. 27).

Prior to the hearing, the attorney filed a written request for a consultative orthopedic examination because a recent lumbar MRI had shown bulging discs, canal stenosis and arthritis with foraminal narrowing. (Tr. 275-276). At the hearing, ALJ Hafer said that he had taken the request under advisement, but said "under the circumstances, with two psychological evaluations and one internal medicine evaluation, I think I'm not going to – I'm not going to authorize and seek a specific orthopedic evaluation." (Tr. 31).

The ALJ noted that a prior claim had been denied in March, 2009, and that is "why we're looking at the onset date of March 24th of 2009 rather than something back in 2005, early 2006." (Tr. 33).[2]

Mr. Gonis testified that he went to the eighth grade and could read "a little bit." (Tr. 32). He was in special education classes for reading. (Tr. 42-43).

He said that he could not work because of arthritis in his left shoulder, aching in his legs and the fact that his doctor told him he may have blockage in his arteries again. He had cardiac catheterization and stent placement in the past. (Tr. 34). He sometimes had chest pain for which he took nitroglycerin. (Tr. 36). He took Tylenol for arthritis. (Tr. 39). He was depressed and cried at times. (Tr. 37).

A vocational expert (VE) testified that plaintiff's past work as a dock worker/truck loader (materials handler) was heavy and semi-skilled, and his work as a janitor was medium and unskilled. (Tr. 44-45). The ALJ asked him to assume a person with a "limited eighth-grade education" who could do light work, limited to occasional stooping, kneeling, crouching and climbing stairs, no ladders, ropes or scaffolds, and no unprotected heights or dangerous machinery. This person was further limited to unskilled work involving only one or two step instructions, work done at a slow or moderate pace, and limited to no more than superficial contact with supervisors, coworkers and the public. The VE testified that this person could not

---

[2] The prior application was denied by a different ALJ on March 25, 2009. See, Tr. 53-65.

do plaintiff's past work. However, this person would be able to do other jobs such as light unskilled cleaner (DOT 323.687-014) and light unskilled hand packer (DOT 920.687-018). Both jobs exist in significant numbers in the regional economy. (Tr. 45-46).

**3.    Medical Records**

The medical records reflect very little treatment after the alleged onset date of March 24, 2009. Mr. Gonis was seen by Dr. Robbins at Chester Clinic before and after that date. The records reflect that, prior to March, 2009, Mr. Gonis was prescribed medication for hypertension and depression. He had coronary bypass surgery in July, 2005. (Tr. 292-293). In March, 2007, his mood disturbance was well-controlled on Prozac. (Tr. 286). Plaintiff saw Dr. Robbins for "disability evaluation" on December 9, 2008. He was taking Prozac and thought it helped with his anger, jitteriness, acting out and anxiety issues. No abnormal findings were noted. (Tr. 284).

Plaintiff next saw Dr. Robbins on October 7, 2009. Dr. Robbins noted that he had no chest pain, palpitations or shortness of breath. He was there to get paperwork for his disability proceedings filled out. Dr. Robbins required a written request from the attorney before he would provide the information. (Tr. 283).

On August 10, 2006, Harry J. Deppe, Ph.D., performed a consultative psychological examination in connection with plaintiff's prior application for benefits. Mr. Gonis told Dr. Deppe that he attended school until the eighth grade and was in special education classes due to problems with reading. IQ testing resulted in a full scale IQ of 76, verbal IQ of 78 and performance IQ of 78. Dr. Deppe concluded that he had borderline intellectual functioning. (Tr. 277-279).

Dr. Adrian Feinerman performed a consultative physical examination on November 5, 2009. Mr. Gonis complained of leg pain and said that he had been diagnosed with restless leg syndrome. He also complained of pain in his neck and left rotator cuff and shortness of breath. He said that he was able to read and write at a third grade level and had always had trouble

6

comprehending. His exam was essentially normal. He had a full range of motion of the spine and the joints. Grip strength was strong and equal. Muscle strength was normal throughout. Fine and gross manipulation were normal. Straight leg raising was negative. He was able to walk on toes and heels, squat, hop and arise from a chair without difficulty. (Tr. 295-305).

A second consultative psychological exam was done in November, 2009, by Dr. Kosmicki. Plaintiff told him that he had been placed in special education classes in the third grade, and that he read at a third grade level. He said that learned at a slow rate and was unable to write well. Dr. Kosmicki did not do any formal IQ testing. He assessed borderline intellectual functioning. (Tr. 306-311).

In April, 2010, Dr. Robbins noted that Mr. Gonis continued to have symptoms related to restless leg syndrome, for which he was taking medication. (Tr. 350). In July, 2010, Dr. Robbins noted that he had low B-12 and had been getting injections, but plaintiff complained about the cost. (Tr. 349).

On October 21, 2010, Dr. Robbins noted that Mr. Gonis had not been getting B-12 injections due to the cost. He was still taking Prozac and was doing well with his mood disturbance "considering his situation." Dr. Robbins noted a history of bilateral lower extremity pain, with numbness and tingling. Mr. Gonis complained of low back pain. On exam, his back was nontender and straight leg raising was negative. Sensation in the lower extremities was intact and his reflexes were normal. (Tr. 348). Dr. Robbins ordered an MRI of the lumbar spine, which was done on October 22, 2010. This study showed slight bulging at T12-L1 with no canal stenosis, mild bulging at L1-2 with a small annular tear, mild canal stenosis and mild disc bulging at L4-5, and moderate disc protrusion at L5-S1 with apparent impression on the left S1 nerve root. (Tr. 354-355).

Mr. Gonis was seen by Dr. James Krieg at Chester Clinic on March 1, 2011. He had acute bronchitis. He complained of intermittent chest pain that was relieved by nitroglycerin.

Dr. Krieg recommended that he be evaluated by his cardiologist, but Mr. Gonis said he could not afford it.  His mood disturbance and restless leg syndrome were stable on medications.  There is no notation of any complaint of back pain.  (Tr. 347).

On April 3, 2011, Dr. Krieg filled out a form in which he assessed plaintiff's ability to do work-related activities.  Dr. Krieg indicated that plaintiff had serious restrictions. For instance, he could lift only 20 pounds, stand/walk for a total of 3 hours a day, and sit for a total of about 4 hours a day.  He also had postural limitations.  Dr. Krieg attributed many of these limitations to low back pain.  (Tr. 360-362).

**4.   RFC Assessment**

On December 18, 2009, state agency consultant Julio Pardo, M.D., assessed plaintiff's physical RFC based upon a review of the medical records.  Dr. Pardo opined that Mr. Gonis was able to do a full range of medium work (able to occasionally lift 50 pounds and frequently lift 25 pounds, stand/walk 6 out of 8 hours, sit 6 out of 8 hours, push/pull with upper and lower extremities), with no postural limitations.  (Tr. 330-337).

A second state agency consultant assessed plaintiff's mental RFC.  She opined that Mr. Gonis had some moderate limitations, including moderate limitation in ability to maintain attention and concentration.  (Tr. 326-329).

The above assessments were affirmed by a third state agency consultant on April 27, 2010.  (Tr. 343-345).

## Analysis

Plaintiff's second point regarding the failure to properly account for his reduced literacy level is dispositive.

Education is a vocational factor which is considered at step 5 of the sequential analysis. 20 C.F.R. §404.1560(c)(1). Various educational levels are described in  20 C.F.R. §404.1564. Pursuant to §404.1564(b)(1), the agency considers a person to be illiterate "if the person cannot

8

read or write a simple message such as instructions or inventory lists even though the person can sign his or her name.  Generally, an illiterate person has had little or no formal schooling." Marginal education is "ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs."  §404.1564(b)(2).  The agency generally considers "formal schooling at a 6th grade level or less" to be a marginal education.  *Ibid*.  A limited education is defined as "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs."  §404.1564(b)(3).  The agency generally considers that a "7th grade through the 11th grade level of formal education is a limited education. " *Ibid*.

The regulations do not define "functional illiteracy."   The ALJ did not explain what he meant by that term or attempt to correlate it with the educational levels described in §404.1564.

Despite finding that  Mr. Gonis had a severe impairment of functional illiteracy, the ALJ concluded that Mr. Gonis' claims about his difficulties in reading and writing were contradicted by evidence that he passed the drivers license test and had worked at a semi-skilled job.  See, Tr. 18.  The ALJ never specifically rejected the claim that plaintiff read at a third grade level.  However, in his hypothetical question to the VE, the ALJ asked him to assume a person with "a limited eighth-grade education." (Tr. 45).  The ALJ did not ask the VE to make any specific assumption about plaintiff's ability to read and write.  Thus, the VE presumably based his testimony on the assumption that plaintiff could read at about an eighth grade level.

An ALJ's decision must be supported by substantial evidence, and the ALJ's discussion of the evidence must be sufficient to "provide a 'logical bridge' between the evidence and his conclusions." **Terry v. Astrue, 580 F.3d 471, 475 (7th Cir. 2009), internal citations omitted.** The ALJ fails to build the requisite logical bridge where he relies on evidence which "does not support the propositions for which it is cited." **Scott v. Astrue, 647 F.3d 734, 740 (7th Cir. 2011).**

The record reflects that plaintiff attended school through the eighth grade, but was in special education classes. The ALJ noted that Dr. Deppe's testing placed him in the borderline range of intellectual functioning, and that plaintiff told Dr. Feinerman that he read at the third grade level. (Tr. 17). The only question the ALJ asked plaintiff about his ability to read was "Are you able to read anything at all?" Plaintiff answered "A little bit." (Tr. 32).

ALJ Hafer failed to build a logical bridge between the evidence and his apparent rejection of the claim that Mr. Gonis read at a third grade level and/or was functionally illiterate. First, he relied on the fact that Mr. Gonis had passed the drivers license test. No questions were asked of Mr. Gonis about how he was able to pass the test. The mere fact that he passed the test does not support any inference about his ability to read, since a person does not have to be able to read and write in order to pass the test. See, 92 Ill. Adm. Code §1030.80(e)("An applicant who is illiterate shall be given the written examination orally.") Secondly, he relied on the fact that Mr. Gonis had done semi-skilled work in the past. However, he completely ignored Mrs. Gonis' statement that she worked at the same place and told him what he needed to do on the job because he could not read. (Tr. 214, 244). This evidence undermined the assumption that Mr. Gonis was able to read at a level sufficient to do semi-skilled work. The ALJ could not simply ignore this evidence. ***Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004).**

The Commissioner argues that plaintiff has failed to show that he was prejudiced by the omission of the specific factor of functional illiteracy from the hypothetical question because he has not shown that either of the jobs identified by the VE would require reading proficiency at a level higher than third grade. This argument ignores the fact that, at step 5, the Commissioner bears the burden of showing that there are a significant number of jobs in the economy that plaintiff is capable of performing. **See, *Bowen v. Yuckert*, 482 U.S. 137, 146, 107 S. Ct. 2287, 2294 (1987); *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).**

Based on the VE's testimony, the ALJ found that Mr. Gonis could do the jobs of Cleaner,

*DOT* 323.687-014 and Packer, *DOT* 920.687-018.   The VE testified that his opinions were consistent with the information in the *Dictionary of Occupational Titles*.  (Tr.46).

>   According to the *DOT*, both jobs have the following requirements:
>
>> Language: Level 1 - READING: Recognize meaning of 2,500 (two- or three-syllable) words. Read at rate of 95-120 words per minute. Compare similarities and differences between words and between series of numbers.
>>
>> WRITING: Print simple sentences containing subject, verb, and object, and series of numbers, names, and addresses.

*Dictionary of Occupational Titles*, §§ 323.687-014 &  920.687-018.

The VE's testimony was based on the assumption that plaintiff had a "limited eighth-grade education."  No one asked the VE whether a person who was functionally illiterate or who read at only a third grade level could do these jobs.  It is certainly not self-evident that a person who was functionally illiterate or who read at a third grade level could do either of these jobs as they are described in the *DOT*.  Therefore, the Court rejects the Commissioner's argument that the failure to include functional illiteracy in the hypothetical question was not prejudicial.  The ALJ must give the VE "a complete picture of a claimant's residual functional capacity" by including in the hypothetical question all physical and mental  limitations which he finds to be credible.  **Jelinek v. Astrue, 662 F.3d 805, 813-814 (7th Cir. 2011).**

In sum, the ALJ's rejection of plaintiff's claim that he was functionally illiterate and/or read at a third grade level was not supported by substantial evidence, and the ALJ's error was prejudicial to plaintiff.  This is not to say that the ALJ was required to accept plaintiff's claim, or that plaintiff would be automatically entitled to benefits if the ALJ found that he is unable to read and write at the levels specified in the *DOT* job descriptions.  It is possible that, had a literacy limitation been included in the hypothetical question, the VE might have testified that plaintiff could still perform the jobs of cleaner and packer.  The Seventh Circuit has noted that the *DOT* considers that basic literacy is "essential *for every job in the economy*" even though many people who cannot read are nevertheless able to find work.  **Donahue v. Barnhart, 279**

F.3d 441, 445-446 (7th Cir. 2002)(emphasis in original).

Because of the ALJ's error, this case must be remanded. The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that Mr. Gonis is disabled or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

It is therefore **ORDERED** that the Commissioner's final decision denying James Gonis' application for social security disability benefits is **REVERSED and REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence <u>four</u> of **42 U.S.C. §405(g).**

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATED:**  November 28, 2012.


s/ Clifford J. Proud
**CLIFFORD J. PROUD**
**United States Magistrate Judge**